UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DIALLO C. DAVIDSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:10-CV-855-JCH |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court upon the motion of Diallo C. Davidson to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

### **BACKGROUND**

Following a jury trial held over two days on September 27 and September 28, 2004, Petitioner was found guilty of one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 992(g)(1). *See United States v. Davidson*, No. 4:04-CR-197-JCH (E.D. Mo.) at Doc. Nos. 48-49. On January 7, 2005, Petitioner was sentenced to 96 months' imprisonment and two years of supervised release. *See id.* at Doc. No. 53. On appeal, Petitioner's conviction was affirmed, but his sentence was vacated and remanded for resentencing in light of *United States v. Booker*, 545 U.S. 220 (2005). *See United States v. Davidson*, 449 F.3d 849 (8th Cir. 2006). On December 13, 2006, Petitioner was resentenced to 120 months' imprisonment and two years of supervised release. *See United States v. Davidson*, No. 4:04-CR-197-JCH (E.D. Mo.) at Doc. Nos. 63-64.

Petitioner seeks to vacate, set aside, or correct his sentence on grounds that: (1) Respondent failed to turn over exculpatory evidence material to Petitioner's guilt or innocence, in violation of

*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (2) Petitioner was denied effective assistance of counsel, as provided for in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

By Memorandum and Order dated May 19, 2010, the Court ordered that Petitioner show cause within thirty days as to why the Court should not dismiss his motion as time-barred. (Doc. No. 3.) On July 23, 2010, after finding that Petitioner's initial response did not address whether his motion was time-barred, the Court issued an Order that Petitioner show cause within twenty-one days why the action is not time-barred. (Doc. No. 9.) Petitioner responded within the ordered time period (Doc. No. 13) and, further, filed a supplemental motion setting forth his claims in greater detail (Doc. No. 4).

Petitioner asserts that the facts supporting his *Brady* and ineffective assistance claims were not discoverable within the one-year period of limitation imposed by 28 U.S.C. § 2255. According to Petitioner, these facts—pertaining to the possible involvement of Detective William Noonan, a prosecution witness at trial, in a scheme to falsify search warrant applications—did not come to Petitioner's attention until he encountered *St. Louis Post-Dispatch* articles regarding the matter. These articles, attached to the instant motion as Exhibit B (Doc. No. 1-1), were published in August 2009 and January 2010, approximately three years after Petitioner's December 2006 resentencing and five years after Petitioner's September 2004 jury trial and conviction.

Petitioner contends that the articles offer up "new facts" in support of his claims. *See* 28 U.S.C. § 2255(4). Respondent argues that Petitioner's motion is untimely. Questions of timeliness do not present jurisdictional bars to the Court's review, however, and so in the interest of judicial economy, the Court will proceed to the merits of Petitioner's claims. *See Trussell v. Bowersox*, 447 F.3d 588, 590-91 (8th Cir. 2006) (citing *Day v. McDonough*, 547 U.S. 198, 126 S.Ct. 1675, 1681-82, 164 L.Ed.2d 376 (2006); *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (en banc)).

**LEGAL STANDARD**

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack ...." 28 U.S.C. § 2255. Claims based on a federal statute or rule, rather than on a specific constitutional guarantee, can be raised "on collateral review only if the alleged error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) (quotations omitted).[1]

"The Court must hold an evidentiary hearing [to consider claims in a § 2255 motion] '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (quoting 28 U.S.C. § 2255). Thus, a movant is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle him to relief." *Payne v. United States*, 78 F.3d 343. 347 (8th Cir. 1996). The Court may dismiss a claim without an evidentiary hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043.

**DISCUSSION**

Petitioner pursues claims that Respondent committed a *Brady* violation by failing to turn over evidence of Detective Noonan's possible misconduct as detailed, primarily, in two *St. Louis Post-Dispatch* articles published on August 29, 2009 and January 2, 2010. The articles are entitled, respectively, "Officers named 1 dead, 1 jailed as informers" and "Former St. Louis officers allege

---

[1] "[A]t least where mere statutory violations are at issue, '§ 2255 was intended to mirror § 2254 in operative effect.'" *Reed*, 512 U.S. at 353, 114 S.Ct. 2291 (quoting *Davis v. United States*, 417 U.S. 333, 344, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974)).

'witch hunt.'" Doc No. 1-1. In addition, Petitioner claims he received ineffective assistance of counsel because his attorney failed to investigate, and to cross-examine Detective Noonan regarding, the aforementioned possible misconduct.

The two newspaper articles submitted by Petitioner concern an internal affairs investigation by the St. Louis Police Department into the fraudulent procurement of search warrants by certain officers, including Detective Noonan who testified for the prosecution at Petitioner's trial. The articles suggest that Detective Noonan falsified affidavits in order to obtain warrants; specifically, that he lied about having conducted surveillance and relied upon informants who were deceased or incarcerated. The allegations against Detective Noonan came during a 12-month period when more than a dozen other officers in the Department either were charged or publicly accused by the Department or by defense attorneys of wrongdoing. As a consequence of the investigation, Detective Noonan retired. He was never criminally charged, however, and he has maintained his innocence.

Again, Petitioner contends that Respondent was required disclose this purportedly exculpatory evidence at trial, and that his attorney provided ineffective assistance by failing to investigate this evidence and to cross-examine Detective Noonan regarding it. Because it is extremely unlikely that Petitioner's attorney could have utilized this evidence absent Respondent disclosing it, Petitioner's claims are inextricably linked, and the necessary first question is whether Respondent had an obligation disclose the evidence Petitioner believes to be exculpatory. For the reasons discussed below, the Court concludes that Respondent had no such obligation, and Petitioner's *Brady* claim fails. In addition, the Court concludes that Petitioner's counsel had no independent duty to investigate this evidence or to cross-examine Detective Noonan regarding it. As such, Petitioner's ineffective assistance claim is also without merit.

**I.**     ***Brady* Claim**

The three elements of a claim for a *Brady* violation are that "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). The prosecution is not required to disclose evidence it does not possess or of which it is not aware. As the Supreme Court has explained, due process issues central to *Brady* are implicated only where there is "discovery after trial of information which had been *known to the prosecution*, but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) (emphasis added). This is because "evidence [that] was available to the prosecutor and not submitted to the defense" raises much greater "elementary fairness" concerns than "if [the evidence] had simply been discovered from a neutral source after trial." *Id.* at 111, 96 S.Ct. 2392. In addition, "[m]ere speculation that some exculpatory material may have been withheld" is not sufficient to warrant habeas relief. *Strickler*, 527 U.S. at 289, 119 S.Ct. 1936.

The new facts proffered by Petitioner suggest Detective Noonan's potential involvement in the falsification of affidavits to obtain search warrants. In this regard, it is important to note, first, that Respondent's case against Petitioner was at no point predicated upon a search warrant. Further, and regardless, the Court cannot reexamine the issue whether evidence, obtained by Respondent and admitted at trial, should have been suppressed as the fruit of an illegal search or seizure when, as here, there was an opportunity to fully and fairly litigate the matter prior to trial. *See United States v. Ishmael*, 343 F.3d 741, 742-43 (5th Cir. 2003) (citing *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993); *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986); *Tisnado v. United States*, 547 F.2d 452, 456 (9th Cir. 1976)).

As the Magistrate, in ruling on Petitioner's motion to suppress prior to trial, explained the circumstances leading to Petitioner's arrest: On January 23, 2004, two detectives, Leo Rice and Thomas Sawyer, went to the home of Petitioner's mother in Ferguson, Missouri, aware that Petitioner was wanted in connection with a homicide committed earlier that month. *See United States v. Davidson*, No. 4:04-CR-197-JCH (E.D. Mo.) at Doc. No. 24.[2] They observed Petitioner exit the house and enter his car. *See id*. The two detectives followed Petitioner for approximately five minutes, at which point Petitioner "evidently saw the detectives following him because he sped away at a high rate of speed, and a vehicle pursuit ensued." *Id*. "[N]umerous serious traffic violations" were committed by Petitioner in the course of the vehicle pursuit. *Id*. Petitioner crashed his vehicle into a chain link fence, jumped out of the window of his car, and jumped over the chain link fence. *Id*. Detective Rice observed that "as the defendant landed on the pavement on the opposite side of the chain link fence, a handgun dropped from [Petitioner's] waistband to the pavement. Rice observed [Petitioner] pick up the handgun and continue to flee." *Id*. Petitioner entered a nearby abandoned house and, after brief further pursuit, was ordered to the ground at gunpoint and placed under arrest for unlawful use of a weapon. *See id*. Detective Noonan arrived at the scene shortly before the arrest, "entered the condemned building," and "retrieved a handgun that appeared very similar to the one Rice had observed [Petitioner] drop from his waistband." *Id*.

The Court concluded that "there is no question that the defendant was lawfully arrested," as "the officers legally observed the defendant jolt loose a firearm from his pocket where it was concealed" in violation of Missouri law. *Id*. (discussing cases). The Court additionally concluded that the warrantless seizure of the handgun from the abandoned house was lawful, noting: "As to the abandoned premises, [Petitioner] had no reasonable expectation of privacy, and having left the

---

[2] The Court adopted the Magistrate's Report and Recommendation on Petitioner's Motion to Suppress Evidence and Statements by Order dated September 23, 2004. (Doc. No. 28.)

gun on the premises of the abandoned house, and then attempting to flee, the defendant likewise abandoned the weapon." *Id*.

Of course, it is conceivable, as Petitioner contends, that evidence regarding the falsification of search warrants could have been used impeach Detective Noonan's credibility more broadly on cross-examination at trial. Assuming *arguendo* the admissibility of such evidence on cross-examination, there is nothing to suggest that Respondent possessed or was aware of the facts now presented by Petitioner—reported in 2009—at the time of Petitioner's trial in 2004. Quite simply, Respondent could not have disclosed evidence to Petitioner at trial that Respondent could not have possessed at that time. *See, e.g.*, *Burgess v. Terry*, 478 Fed. Appx. 597, 600 (11th Cir. 2012) ("there can be no suppression of evidence that does not exist at the time of trial").

Considerable speculation is required to place information known to the St. Louis Police Department, in 2009, into the hands of federal prosecutors (*i.e.*, Respondent) five years earlier, in 2004, when Petitioner was tried and convicted. Obviously, there is the five-year time lapse. But, even overlooking this sizable time lapse, there is the additional fact that Detective Noonan was not investigated by federal authorities, but rather by local authorities. The Court finds no reasonable basis to impute knowledge of this information to Respondent as a general matter, much less to do so when it was unknown until five years after Petitioner's trial. *See, e.g.*, *United States v. Bender*, 304 F.3d 161 (1st Cir. 2002) ("the rigors of *Brady* usually do not attach to material outside the federal government's control").

Moreover, as explained in detail above, absent a search warrant in Petitioner's case, Respondent had no occasion to independently examine the credibility of Detective Noonan—or of any law enforcement officer involved in Petitioner's arrest—in connection with the possible misconduct Petitioner raises now. In short, without a nonspeculative foundation to infer that Respondent failed to make all pertinent *Brady* material available to Petitioner at trial, the Court

cannot conclude that there was a *Brady* violation in this case. *See Strickler*, 527 U.S. at 289, 119 S.Ct. 1936; *see also, e.g.*, *U.S. v. Joslyn*, 206 F.3d 144, 154 (1st Cir. 2000) ("only the evidence that the defendants have shown was actually known to the government is subject to the *Brady* standard").

## II. Ineffective Assistance Claim

Proceeding to Petitioner's ineffective assistance claim, to prevail on an ineffective assistance claim a petitioner "must show that counsel's performance was deficient and that he was prejudiced by that deficient performance." *Graham v. Dormire*, 212 F.3d 437, 440 (8th Cir. 2000) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Burkhalter v. United States*, 203 F.3d 1096, 1097 (8th Cir. 2000)). "Counsel's performance was deficient if it fell 'outside the wide range of professionally competent assistance.'" *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995) (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). "Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful." *Graham*, 212 F.3d at 440 (citing *James v. Iowa*, 100 F.3d 586, 590 (8th Cir. 1996)).

In evaluating an alleged deficiency in counsel's performance, "a court should not allow hindsight to affect its analysis of whether counsel acted reasonably before and during trial." *United States v. Luke*, 686 F.3d 600, 604 (8th Cir. 2012). "[C]ourts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed in the proceedings to that point, and his best judgment as to the attitudes and sympathies of judge and jury." *Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987).

Petitioner asserts that his counsel improperly failed to investigate the possible misconduct by Detective Noonan proffered by Petitioner and, relatedly, that his counsel was deficient in not cross-examining Detective Noonan regarding this possible misconduct. With respect to the first aspect of Petitioner's claim, as already noted, it is difficult to cognize circumstances in which Petitioner's counsel could have used evidence that was unknown to the prosecution and, accordingly,

that the prosecution was under no obligation to disclose to Petitioner. Whether Petitioner's counsel was ineffective in not investigating the issue herself is a question of reasonableness. *See Strickland*, 460 U.S. at 691, 104 S.Ct. 2052 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). At the time of Petitioner's trial, no facts existed to point Petitioner's counsel down this investigatory path—a path dictated by "the facts as disclosed in the proceedings to that point." *Blackmon*, 825 F.2d at 1265. As such, it was hardly unreasonable for Petitioner's counsel not to explore the matter independently. Indeed, to do so would likely have been fruitless, and "an attorney need not pursue an investigation that would be fruitless." *Harrington v. Richter*, --- U.S. ----, 131 S.Ct. 770, 789, 178 L.Ed.2d 624 (2011) (citing *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052). There is nothing before the Court to support a conclusion that counsel's investigation on behalf of Petitioner was inadequate.

Turning to the second aspect of Petitioner's claim—the cross-examination of Detective Noonan—once again Petitioner's counsel could not have pursued a line of inquiry of which she was unaware and had no basis to be aware. Further, even had Petitioner's counsel been aware of this potential means of impeaching Detective Noonan, "[d]ecisions about whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (quotations omitted); *accord United States v. Steele*, 727 F.2d 580, 591 (6th Cir. 1984) ("cross-examination ... falls within the area of trial tactics and strategy that should not be subjected to second guessing and hindsight"). Hence, once more, there is nothing before the Court support a conclusion that Petitioner received inadequate assistance of counsel in this regard. Petitioner's ineffective assistance claim is, therefore, unavailing.

## CONCLUSION

**IT IS HEREBY ORDERED** that, in accordance with the foregoing, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Doc. No. 1) is **DENIED**, and his claims are **DISMISSED** with prejudice. An Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).

Dated this 27th day of March, 2013.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE